**Sidney F. BROWN, Jr.,**
**Petitioner-Appellant,**

v.

**David C. LUNDGREN, Warden,**
**Federal Correctional Institution,**
**Respondent-Appellee.**

No. 75–3184.

United States Court of Appeals, Fifth Circuit.

March 18, 1976.

Donald R. Scoggins, Dallas, Tex., for petitioner-appellant.

William O. Wuester, Asst. U. S. Atty., Ft. Worth, Tex., for respondent-appellee.

Before BELL, GODBOLD and RONEY, Circuit Judges.*

BELL, Circuit Judge:

This case involves the extent to which a federal court may judicially review the parole release process of the United States Board of Parole, on the basis of a petition for writ of habeas corpus against the warden who has custody of the prisoner seeking such relief. Appellant Sidney F. Brown, Jr., challenges a decision of the Parole Board that effectively denies him eligibility for parole until his mandatory release date. The Parole Board was not named as a respondent. We find only a narrow jurisdictional base for such a petition, and affirm the order of the district court denying relief because Brown has not alleged facts that place him on that base.

Appellant Brown was first considered for parole in February, 1975, after being confined in the federal system since July 6, 1973. The local parole board denied him parole on the basis of its guidelines for the release of adult offenders set forth at 28 C.F.R. § 2.20 (1975). These guidelines establish ranges of confinement within which the board will consider an offender as eligible for parole. The particular range is determined by a combination of two factors—(1) offense characteristics: severity of offense behavior, and (2) offender characteristics: parole prognosis (salient factor score).

The salient factor score is mechanically determined on the basis of nine factors, such as prior convictions and incarcerations, prior drug involvement, family situation, job expectations and the like. Brown was given a salient factor score of seven, which he does not challenge.

The degree of offense severity ranges from "low" to "greatest" in seven steps.

The guidelines give a number of examples of offenses that fall within each degree. Brown challenges the determination of the parole board that his degree of offense severity was "very high," as opposed to "high," in that he was only convicted of selling amphetamines, or "soft" drugs, an offense listed within the "high" category. The parole board responds that the guidelines give the board discretion to place an offender in a severity degree one step lower or higher than the degree his offense is listed within, on the basis of mitigating or aggravating circumstances, which it asserts are present here. Brown argues that this was arbitrary and capricious, in that the factors relied on as aggravating circumstances have already been considered in setting the salient factor score, and were implicitly considered by the district court in setting sentence.

Before considering the merits of Brown's contentions, we must first ascertain upon what jurisdictional base we stand in looking at his claim. Brown petitioned the district court for a writ of habeas corpus on the basis of 28 U.S.C.A. § 2241(c), and argues before this court that the decision of the parole board is reviewable under the provisions of the Administrative Procedure Act as well. In order for the writ of habeas corpus to extend to a federal prisoner, that prisoner must be in custody in violation of the Constitution or laws of the United States. 28 U.S.C.A. § 2241(c)(3). Because Brown has sued only the warden and not the board, our first task must be to determine whether Brown has alleged either a federal constitutional or federal statutory wrong by the parole board sufficient to make his custody by the warden unlawful under the terms of the habeas corpus statute.

At the constitutional level, there is a clear distinction between the loss of a statutory privilege once obtained and the denial of that same privilege, never

---

* This opinion was concurred in by Judge Bell prior to his resignation from the Court on March 1, 1976.

given. While the threatened loss of a privilege may be "grievous" and therefore require some degree of procedural due process protection, *see, e. g., Morrissey v. Brewer,* 1972, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484, the denial of that privilege may only be subject to the procedural demands of the particular enabling statute. Thus, while parole revocation and prison discipline are clearly within the ambit of the Due Process Clause of the Fifth and Fourteenth Amendments, the mere expectation of parole release while still in otherwise lawful custody is not so vested as to result in a "grievous loss" if denied by the parole board. We thus disagree with the characterization by the Court of Appeals for the District of Columbia of the denial of parole as a deprivation of "the valuable features of conditional liberty" equivalent to the loss involved in parole revocation that mandates due process protection. *Childs v. United States Board of Parole,* 1974, 167 U.S.App.D.C. 268, 511 F.2d 1270, 1278.

In any context where it is asserted that constitutional due process is required, the basic, threshold question is whether there is a "grievous loss" of either a liberty or property interest. If there is no such loss, then the second question of whether the particular challenged procedure comports with fundamental fairness is never reached. In short, we find that the denial of parole as distinguished from the revocation of parole as in *Morrissey, supra,* is not a "grievous loss", and we therefore do not consider whether the procedures of the parole board deny constitutional due process.[1]

In a federal custody situation, however, the absence of a constitutional claim does not necessarily vitiate the right of the prisoner to review by habeas corpus of the denial of his parole by the Board, if such denial causes his custody to be in violation of the statutory "laws of the United States." In particular, if the parole board is subject to the requirements of the Administrative Procedure Act, then its procedures must comport with those required by the Act. A number of other circuits have found that the parole board is in fact subject to the Administrative Procedure Act, insofar as the board is required to give reasons to the prisoner for the denial of his parole. *See King v. United States,* 7 Cir., 1974, 492 F.2d 1337; *Mower v. Britton,* 10 Cir., 1974, 504 F.2d 396. *But see Childs v. United States Board of Parole, supra* at 1281–85 (finds statement of reasons constitutionally required). And, to the extent that the parole board establishes guidelines or procedures under the APA, the Board is as controlled by those rules and procedures as any statutory law. *See United States v. Joseph G. Moretti, Inc.,* 5 Cir., 1973, 478 F.2d 418, 425. *Pacific Molasses Co. v. FTC,* 5 Cir., 1966, 356 F.2d 386, 389–90.

Where a prisoner asserts the failure of the board to comply with the APA or its own guidelines or rules as a basis for a writ of habeas corpus, his petition becomes difficult to distinguish from a simple direct review of the board's decision under the terms of the APA itself. The APA itself expressly authorizes the review of agency action by any applicable form of legal action (absent a special statutory method of review) including a writ of habeas corpus.[2] The pre-APA

1. In a different context, the Fourth Circuit has reached a different conclusion. In *Bradford v. Weinstein,* 4 Cir., 1975, 519 F.2d 728, *vacated and remanded for dismissal as moot,* 1975, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350, the court declined to follow the reasoning expressed by this court in the en banc decision in *Scarpa v. United States Board of Parole,* 5 Cir., 1973, 477 F.2d 278, *vacated for consideration of mootness,* 1973, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44, *dismissed as moot,* 5 Cir., 1973, 501 F.2d 992.

2. 5 U.S.C.A. § 703 provides, in pertinent part: The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction.

law of this circuit, however, is that habeas corpus, because of the discretion vested in the Board of Parole, is not an available remedy for a prisoner seeking to challenge a denial of parole by the board.[3]  See Goldsmith v. Aderholt, 5 Cir., 1930, 44 F.2d 166.  Because Goldsmith was decided prior to the enactment of the APA, we deem it necessary to consider whether that decision has been modified in any way by the act of Congress.[4]

■ The primary limitation on judicial review under the APA is contained in 5 U.S.C.A. § 701(a).[5]  In particular, that clause limits the applicability of the APA to the extent that "agency action is committed to agency discretion by law." The federal courts have always considered the parole board to be vested with broad discretion in deciding whether to grant a parole.  See Calabro v. United States Board of Parole, 5 Cir., 1975, 525 F.2d 660, 661; Tarlton v. Clark, 5 Cir., 1971, 441 F.2d 384, 385.  Thus, the merits of the decision whether to allow parole to a prisoner is subject to review by a federal court only where the decision is alleged to be so arbitrary and capricious as to be beyond that discretion.  This is not inconsistent with Goldsmith, which assumed arbitrary action arguendo.

On the other hand, the process by which the board reaches that decision is more readily subject to judicial review, where the board does not comply either with the APA or with its own rules. Such review in no way considers the merits of the Board's decision and is limited to a consideration of those parts of the APA held to be applicable to the Board.  For example, in King v. United States, 7 Cir., supra, the requirement that written reasons be given for a denial of parole was based on 5 U.S.C.A. § 555(e) only.  The court in King did not hold that all provisions of the APA applied to the Board and was therefore consistent with Hyser v. Reed, 1963, 115 U.S.App.D.C. 254, 318 F.2d 225, 236–37, in which Chief Justice (then Judge) Burger held that the parole release decision was not an "adjudication" subject to the procedural requirements of 5 U.S.C.A. § 554, thereby not requiring a formal hearing by the board.

■ In either case, a prisoner challenging the decision of the board or the process by which that decision was reached must show that the action of the board was so unlawful as to make his custody in violation of the laws of the United States.  There must be a sufficient nexus between the allegedly illegal action and the legality of his custody for habeas corpus to lie.  A prisoner has no right to release on parole; he has only a statutory right to have the board comply with the APA and its own rules and

3. A number of decisions of this court have reviewed the merits of district court decisions that have entertained petitions for habeas corpus by prisoners denied parole by the board or aggrieved by other parole board decisions. Calabro v. United States Board of Parole, 5 Cir., 1975, 525 F.2d 660; Sexton v. Wise, 5 Cir., 1974, 494 F.2d 1176; Gorham v. Richardson, 5 Cir., 1973, 483 F.2d 71; Buchanan v. Clark, 5 Cir., 1971, 446 F.2d 1379.  In each case, this court affirmed the lower court's denial of relief or reversed a grant of relief, on the basis of the broad discretion vested in the parole board, and did not consider the question of the proper jurisdictional base for such petitions.  We therefore do not regard these decisions as controlling on the question of our jurisdiction.

4. The unavailability of habeas corpus does not mean that judicial review of the board's actions is completely unavailable.  An increasing number of courts have found the Board of Parole to be subject to certain parts of the APA.  See, Pickus v. United States Board of Parole, 1974, 165 U.S.App.D.C. 284, 507 F.2d 1107; Mower v. Britton, 10 Cir., supra; King v. United States, 7 Cir., supra.  The Board is an "agency" within the meaning of the APA, and the prisoner is sufficiently "aggrieved" to give him standing to seek review of the Board's decision, even though he is not "aggrieved" in any constitutional sense.  Because the Board of Parole was not a respondent in this case, we do not reach this question.

5. 5 U.S.C.A. § 701(a) provides:
(a) This chapter applies, according to the provisions thereof, except to the extent that—
    (1) statutes preclude judicial review; or
    (2) agency action is committed to agency discretion by law.

guidelines. A departure by the board does not necessarily make his custody illegal.

In this case, Brown asserts several grounds in support of his contention that he is illegally being denied parole. He argues that his being given a "very high" offense severity was arbitrary and capricious in that his offense did not fall within the examples given for that category. He further suggests that, even if the parole board may in some cases depart from those examples, the use of the same factors to establish a salient factor score and to raise the offense severity is also arbitrary and capricious. Finally, he argues that the reasons ultimately given by the national board to affirm the denial of parole by the local board were post hoc determinations that he was never allowed to contest.

▮ Given the broad range of discretion vested in the parole board, Brown's first two contentions are without merit. The board's own guidelines allow it to take into consideration aggravating circumstances in setting the degree of offense severity. Such an adjustment based on the individual circumstances of his case clearly falls within the board's discretion. This is equally true of the use of those factors for more than one purpose. We hold that the parole board may, within its discretion, consider such matters in adjusting the degree of offense severity in particular cases. *See also Lupo v. Norton*, D.Conn., 1974, 371 F.Supp. 156.

▮ There would be some merit in Brown's third contention had he never been given an opportunity to contest the factors asserted by the parole board to justify the "very high" classification. *See Grattan v. Sigler*, 9 Cir., 1975, 525 F.2d 329, 331. The record shows, however, that Brown was in fact informed of the reasons subsequently used for the higher classification at the initial parole hearing and was allowed to contest them at that time. The context of his federal arrest and the information in the presentence report were considered at the same hearing and were also subject to challenges by him.

In sum, Brown has alleged nothing that would make his custody by the warden in violation of the Constitution or laws of the United States. The order of the district court denying relief is

Affirmed.

GODBOLD, Circuit Judge (specially concurring).

If I were free to do so I would follow *Childs v. United States Board of Parole*, 167 U.S.App.D.C. 268, 511 F.2d 1270, 1278 (1974), and *Bradford v. Weinstein*, 519 F.2d 728 (CA4), *vacated and remanded for dismissal as moot*, 1975, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350, which hold that procedures of the parole board relating to consideration of a prisoner for parole are subject to the demands of due process just as procedures relating to parole revocation. This is the position which I took as one of the dissenters in *Scarpa v. United States Board of Parole*, 477 F.2d 278 (CA5), *vacated for consideration of mootness*, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973), *dismissed as moot*, 501 F.2d 992 (CA5, 1973). As Judge Winter pointed out, writing for the Fourth Circuit in *Bradford*, the right-privilege distinction, which is central to Judge Bell's conclusion on this matter, has now been eradicated.

I feel, however, that I am bound, albeit tenuously, by the cryptic decision in *Sexton v. Wise*, 494 F.2d 1176 (CA5, 1974), which, in a single sentence and without discussion or citation of authority, appears to hold that due process protections do not apply until after parole has been granted.

Without reservation I agree with the majority with respect to the availability of review by habeas where a prisoner is held "in custody in violation of the Constitution or laws of the United States", and with the holding on the merits of such review in this instance directed to the statutory "laws of the United States".