Patrick P. KING, Petitioner-Appellee,

v.

WARDEN, UNITED STATES PENITENTIARY, Regional Director, United States Bureau of Prisons, and Regional Director, United States Board of Parole, Atlanta, Georgia, Respondents-Appellants.

No. 76–1704.

United States Court of Appeals, Fifth Circuit.

May 9, 1977.

---

John W. Stokes, Jr., U. S. Atty., Sherman D. Johnson, J. Robert Cooper, Asst. U. S. Attys., Atlanta, Ga., Joe Ciolino, Dept. of Justice, Richard L. Thornburgh, Asst. Atty. Gen., George W. Calhoun, Atty., Dept. of Justice, Washington, D. C., for respondents-appellants.

Patrick P. King, pro se.

P. Bruce Kirwan, Federal Public Defender (Court-appointed), Atlanta, Ga., for petitioner-appellee.

Appeal from the United States District Court for the Northern District of Georgia.

Before BROWN, Chief Judge, and COLEMAN and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge.

Respondents, specifically the Warden of the United States Penitentiary, Atlanta, the Regional Director of the United States Bureau of Prisons, and the Regional Director of the United States Board of Parole, appeal from an order of the District Court which requires the Board of Parole to provide all federal prisoners at their initial parole release hearing with examiners "who have not seen or heard or had available to them any of the evidence involved in [an

original jurisdiction] classification." On the narrow issue left in the case we reverse the order of the District Court.

## I. PAROLE POSTURE

In 1972 and 1973, the petitioner, Patrick P. King, was sentenced to a total of eight years upon conviction of theft from interstate shipment, possession of goods stolen from interstate shipment, and possession of forged federal reserve notes. King is presently incarcerated in the United States Penitentiary, Atlanta, Georgia.

In his complaint, King alleged the lack of due process protection in certain pre-parole procedures.[1] Specifically, he asserted that he was designated as a "special offender" by the Bureau of Prisons without being given an opportunity to refute the evidence considered in the application of such a designation. He further asserted that this erroneous designation was taken into consideration in his initial parole release hearing by Parole Board hearing examiners. He contended that the special offender designation caused the examiners to recommend his case for "original jurisdiction" consideration before the entire Board of Parole. The complaint prayed that the special offender designation be expunged from petitioner's prison records and that he be given a new classification hearing which would provide all constitutionally required due process protections.

At a prisoner's initial parole hearing an examiner *panel* of the United States Board of Parole studies and discusses with the prisoner information contained in his institutional file, maintained by the Bureau of Prisons. In some cases the record may be stamped that "this prisoner should not be

---

1. There is an apparent conflict in Georgia among the District Courts concerning the due process protection applicable to a parole classification hearing which the parties to this appeal would have us resolve. In *Rothman v. Director, United States Board of Parole,* N.D. Ga.1975, 403 F.Supp. 188, Judge Hill concluded that a prisoner has a legitimate interest in the original jurisdiction classification to which rudimentary due process rights attach. *Accord,*

*Stassi v. Hogan,* 395 F.Supp. 141 (N.D.Ga. 1975). Judge Henderson rejected this analysis in *Mangiameli v. Skaggs,* Civ. No. 75–1602A (N.D.Ga. Dec. 5, 1975), holding that the mere expectation of parole does not merit constitutional protections.

These decisions antedated our decision in *Brown v. Lundgren,* 5 Cir. 1976, 528 F.2d 1050 (cited in the text of this opinion).

transferred without prior approval of the central office." Such a notation is placed on the file of a prisoner who has been designated by the Bureau of Prisons as a "Special Offender." [2] The notation relates solely, however, to the internal administration of the Bureau of Prisons and is used to signal that an inmate may not be transferred or participate in community programs without prior approval from the central office of the Bureau of Prisons. It has no bearing on Parole Board consideration of a prisoner for release on parole. The Board decision in that regard is based upon its independent consideration of the relevant facts as disclosed in the documents contained in the prisoner's file.

The hearing examiner *panel* may waive a parole release decision and submit the case to the Regional Director of the Board of Parole with the recommendation that it be designated as "original jurisdiction." The

case is then considered by the Regional Director, who may designate the case as original jurisdiction and submit it, along with his recommendation and vote, to the National Directors of the Board of Parole for a decision, or who may decline to designate the case as original jurisdiction and provide for a decision to be made by the Hearing Panel. This procedure is provided for in 28 C.F.R. §§ 2.17 and 2.24.

The decision to refer is based upon a finding that (1) the offense was of an unusually serious or aggravated nature (i. e., crimes which involved an unusual degree of sophistication, crimes which were part of a large scale criminal conspiracy or continuing criminal enterprise); or (2) the case is one in which the decision of the Parole Board will receive a wide degree of public attention; or (3) the case involves a prisoner serving long-term or life sentences. 28 C.F.R. § 2.17.[3]

2. Under the provisions of Bureau of Prison Policy Statement 7900.47, special offender classification is authorized for a prisoner who falls into any one of eight categories.

1. *Non-federal Offenders.* Includes all offenders in Bureau of Prisons facilities serving non-federal commitments under a valid contract with the non-federal authority. This does not include offenders serving concurrent federal and non-federal sentences nor District of Columbia offenders unless one of the following categories is applicable.

2. *Offense and Prior Record.* Cases where official investigative reports show that an offender was involved in sophisticated criminal activity of an organized nature, or was a close or frequent associate of individuals involved in organized criminal activity.

3. *Protection Cases.* Those offenders whose lives would be in grave danger if confined in the same facility with certain other offenders because of cooperation with the government or other valid reasons.

4. *Extreme Custody Risks.* Extremely dangerous offenders whose escape attempts or other disruptive activities have placed or would likely place the lives of others in serious danger.

5. *Subversives.* Members of subversive organizations which advocate overthrow of the government, or violation of the civil rights of others.

6. *Cases of Notoriety.* Offenders whose cases have caused broad national publicity or whose presence in the community would probably generate undue adverse public reaction.

7. *Threats Against High Government Officials.* Those serving sentences for making such threats, and offenders who make such threats while confined for unrelated offenses.

8. *Other.* In the judgment of the Warden, or his designee or Central Office officials designated by the Assistant Director, Correctional Programs Division, any offender who does not fall within the categories above, yet requires especially close supervision for his own protection or the protection of others.

3. The pertinent regulation currently in effect is: 28 C.F.R. § 2.17 Original Jurisdiction cases.

(a) A Regional Director may designate certain cases as original jurisdiction cases. The Regional Director shall then forward the case with his vote, and any additional comments he may deem germane, to the National Directors for decision. Decisions shall be based upon the concurrence of three votes with the appropriate Regional Director and each National Director having one vote. Additional votes, if required, shall be cast by the other Regional Directors on a routing basis as established by the Chairman of the Board.

(b) The following criteria will be used in designating cases as original jurisdiction cases:

(1) Prisoners who have committed serious crimes against the security of the Nation, e. g., espionage, or aggravated subversive activity.

(2) Prisoners whose offense behavior (A) involved an unusual degree of sophistication or planning or (B) was part of a large scale criminal conspiracy or a continuing criminal enterprise.

(3) Prisoners who have received national or unusual attention because of the nature of the

Designation of a case as original jurisdiction does not reflect a judgment by the Board as to the merits of an inmate's application for parole. The referral has the sole effect of bringing the case before the National Directors of the Board of Parole for the initial parole release decision, whereas in the normal case the authority to make the initial decision is delegated to the hearing examiners. The referral also has the additional effect of providing the inmate with an appeal to the entire Board of Parole, at which time his representative may appear and argue his case.

The purpose of the increased voting quorum requirements is not to make parole more difficult to obtain but to protect confidence in the integrity of the Parole Board by assuring that there is a broader consensus among Board members in cases where there is more likely to be public or private pressure to parole or not to parole. 40 Fed.Reg. 5357 (February 5, 1975).

Pursuant to these procedures, King's case was designated as "original jurisdiction". After review, the original jurisdiction panel notified petitioner that his case was being continued "with an Institutional Review Hearing in January, 1976." Petitioner received 4 subsequent parole hearings, the latest on December 17, 1975; each resulted in an original jurisdiction classification and, after consideration by the Parole Board, was continued to January, 1976.

## II.  RELIEF GRANTED BY THE DISTRICT COURT

On November 11, 1975, the District Court ordered the "Special Offender" classification expunged from all of petitioner's records and, moreover, restrained reclassification without compliance with certain minimal due process requirements. The Court also requested the Board of Parole to file a further response, indicating whether certain minimal procedures were followed in applying the "original jurisdiction" classification. If the responses were negative, pe-

titioner was to be given a new hearing. Specifically, the Court inquired:

1.  Whether or not petitioner at his original parole interview was given notice that his case may be appropriate for original jurisdiction status;

2.  Whether at his initial parole interview he was given the underlying basis for such possibility and what such a designation means;

3.  Whether at that initial parole interview he was given an opportunity, if he desired, to refute the evidence so relied upon;

4.  Whether petitioner was given ten (10) days subsequent to the initial parole interview in which to present documents on his behalf;

5.  Whether if all of the four above were so accorded petitioner, the reason or reasons were given to petitioner for a recommendation as original jurisdiction;

6.  If all of the above were accorded petitioner whether or not petitioner was given the opportunity to contest this recommendation through an administrative appellate process.

Respondents replied that they were complying with the order to expunge. With respect to original jurisdiction classification, respondents admitted that petitioner had not been provided with the information and procedures outlined by the Court but that in the future he would be accorded those procedures as set out in *Rothman v. Director, United States Board of Parole*, N.D. Ga.1975, 403 F.Supp. 188, 196.

These procedures were embodied in the Court's Judgment of December 8, 1975, as follows:

1.  Petitioner at his original parole interview shall be given notice as to whether or not his case is appropriate for original jurisdiction status.

2.  At his initial parole interview he shall be given the underlying basis for the possibility that his case may be appropri-

crime, arrest, trial, or prisoner status, or because of the community status of the offender or his victim.

(4) Prisoners sentenced to a maximum term of forty-five years (or more) or prisoners serving life sentences.

ate for original jurisdiction status and what such a designation means.

3. At such initial parole interview petitioner must be given an opportunity if he desires to refute the evidence so relied upon.

4. Petitioner must be given ten (10) days subsequent to the initial parole interview in which to present documents in his own behalf in regard to the foregoing.

5. If it is found that petitioner's case is appropriate for recommendation for original jurisdiction, the reason, or reasons, for such finding must be given to petitioner at such hearing.

6. If the recommendation made at such hearing is contrary to the contentions of petitioner as to such classification petitioner shall be advised as to his rights for administration of appellate process.

The respondents acquiesced in this order and do not now attempt to appeal the correctness of these requirements. Consequently, they are no longer a matter of concern to this Court.

On December 22, 1975, petitioner filed a Petition for Declaratory and Injunctive Relief and for Habeas Corpus, the essence of which was to have the respondents cited for contempt of court for failure to obey the aforesaid Court order of December 8.

The Court refused to hold the respondents in contempt for failure to expunge portions of petitioner's records because respondents had properly expunged all references to a "special offender" designation.

The Court also refused to hold the Board in contempt with respect to its classification as "original jurisdiction," noting that the extent of the due process requirements had not been clearly set out in the December 8 order. Section II of that order was amended by an order dated January 14, 1976, which stated:

Paragraph 1 thereof is amended by adding the following:

"This notice must be specific and detailed enough to communicate to the prisoner the reason and evidence to be relied upon by the Board of Parole in such classification, and to enable the prisoner to establish his defenses in opposition to such classification."

Section II is further amended by adding as Paragraph 7 to read as follows:

7. All parole examiners at petitioner's initial parole interview must be "objective hearing officers who have not seen or heard or had available to them any of the evidence involved in the classification."

Section II is further amended by adding to Paragraph 5 thereof the following:

"Also, if it is found that petitioner's case is appropriate for recommendation for original jurisdiction those reasons and findings must be submitted in written form in support thereof to the petitioner within a reasonable time after the conclusion of such hearing."

The Government appeals from this amended order, alleging that these broad requirements are not only unduly burdensome but also go beyond any due process required by the Constitution in a prisoner classification hearing.

## III. ISSUE BEFORE THIS COURT

At oral argument counsel for the petitioner conceded that the requirements of amended Paragraph 1 and amended Paragraph 5 are indeed excessive.

He insists, however, that the District Court was correct in requiring that all parole examiners be "objective hearing officers who have not seen or heard or had available to them any of the evidence involved in the classification." Petitioner claims that this is essential in his case since his hearing examiners are the same ones who applied the original jurisdiction classification when his records were erroneously stamped "special offender". He insists that by reason of their consideration of erroneous evidence in the past, they are necessarily prejudiced against him in future parole hearings.

We disagree.

■ What petitioner seeks is that each time a prisoner comes up for parole review

it must be before a panel which has not theretofore considered that prisoner's case. This runs counter to the prior adjudications of this Court.

■ In *Brown v. Lundgren*, 5 Cir. 1976, 528 F.2d 1050, 1053, we held that the denial of parole as distinguished from the revocation of a parole is not a grievous loss and thus we would not "consider whether the procedures of the parole board deny constitutional due process."

■ And if this were not so, we have held that a trial judge who is familiar with a defendant's background by reason of having previously tried him is not disqualified in subsequent cases against him, *Smith v. United States*, 5 Cir. 1966, 360 F.2d 590. In the present case the petitioner has alleged no facts or offered any proof that any of the examiners having prior contact with his case were, in fact, prejudiced against him.

The petitioner having conceded that the other two requirements of the amended order are excessive, the January 14 order of the District Court is reversed.

REVERSED.

JOHN R. BROWN, Chief Judge, concurring:

I concur fully in the opinion and the result. I would simply emphasize that the Government's appeal, impelled undoubtedly out of a desire for this Court to unscramble the confusion in the Northern District of Georgia [1] necessarily fails in that objective. Happily, we are not likely to have to face this in view of a newly enacted U.S. Parole Commission regulation, 41 Fed.Reg. 37321, which amended 28 C.F.R. § 2.17, effective October 1976.