**John N. MITCHELL, Plaintiff,**

v.

**Griffin B. BELL, as Attorney General of the United States, et al., Defendants.**

Civ. A. No. 78–331–N.

United States District Court,
M. D. Alabama, N. D.

Sept. 15, 1978.

Ira DeMent, Montgomery, Ala., Jerris Leonard, Leonard, Cohen, Gettings & Sher, Charles Morgan, Jr. and William G. Hundley, Hundley & Cacheris, Washington, D. C., for petitioner Mitchell.

Barry E. Teague, U. S. Atty., and Kenneth E. Vines and Susan B. Bevill, Asst. U. S. Attys., M. D. Ala., Montgomery, Ala., for defendants.

MEMORANDUM

JOHNSON, Chief Judge.

John N. Mitchell originally received a sentence of 30 months to eight years. This

sentence was modified on October 4, 1977, to a sentence of one to four years. Mitchell began his incarceration on June 22, 1977. Subsequently he was granted a medical furlough of approximately five months in duration. On July 5, 1978, a hearing panel of the United States Parole Commission recommended that Mitchell's case be referred as an "original jurisdiction" case.[1] As an alternative recommendation, the panel set an effective parole date of August 16, 1978, based on a classification of Mitchell's offense as misprision of a felony. This placed him within a guideline range of 12–16 months. The National Commissioners met on July 20, 1978, taking the case as one of original jurisdiction. They changed the classification of Mitchell's offense to "high" rather than "moderate" severity. The applicable guideline range was thus increased to 16–20 months.[2] Based on Mitchell's relative culpability to that of his codefendants, his extended time on furlough status and his age and medical condition, the Commissioners awarded a release date of January 19, 1979.[3] On appeal, the full Parole Commission affirmed the decision of the National Commissioners, but deleted as a reason Mitchell's "extended time on furlough status." In a subsequent letter from the Chairman of the Commission to Attorney Charles Morgan (Exhibit K), it was explained that Mitchell was given full credit

as time served for the period of medical furlough.[4] As of January 19, 1979, he will have served 19 months, bringing his time in custody within the guideline range of 16–20 months for high severity offenses. Mitchell now petitions for a writ of habeas corpus and also presents an application for release on bail pending a determination of the habeas petition.

## THE PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has the right to challenge the action of the Parole Commission by habeas corpus. *Brown v. Lundgren,* 528 F.2d 1050 (5th Cir, 1976). The Fifth Circuit has held, however, that while parole revocation and prison discipline are within the ambit of the Due Process and Equal Protection clauses, the determination of parole eligibility is not. *Brown, supra.; cf. Childs v. United States Board of Parole,* 167 U.S. App.D.C. 268, 511 F.2d 1270 (1974). However, the Fifth Circuit has supplied an alternative ground for judicial review of parole eligibility decisions. The procedures employed by the Parole Commission are subject to review under the Administrative Procedure Act. This difference, while important theoretically, is irrelevant as a practical matter. Those courts that have ap-

1. The Regulations of the Commission provide that cases of prisoners who have received national or unusual attention may be referred to the National Commissioners for decision. 28 C.F.R. § 2.17.

2. In his traverse, petitioner alleges that this change is arbitrary and in violation of footnote 2 to the parole guidelines. That footnote provides that where the petitioner's offense is not listed in the guidelines, the proper category will be obtained by comparing the severity of his offense with that of listed offenses. Petitioner contends that his offenses could only be equated with "misprision of a felony." Petitioner conveniently ignores footnote 4, which states that if the offense behavior involved multiple, separate offenses, the severity level may be increased. It is no answer that Special Prosecutor Leon Jaworski summed up petitioner's wrongdoing in the single phrase, "suppression of the truth." (Exhibit L). Moreover, even if petitioner's categorization of his offense were correct, the guidelines are just that: decisions

outside them may be made where the circumstances warrant. 28 C.F.R. § 2.20(c). Here, a primary consideration in setting the guideline range as "high severity" was that petitioner's codefendants, H. R. Haldeman and John Erlichman, were so classified (Affidavit of Cecil McCall). The Commission's decision is consistent with the purpose of the guidelines to "promote a more consistent exercise of discretion." 28 C.F.R. § 2.20(a).

3. Petitioner challenges these reasons as being insufficiently particular. Title 18, Section 4206(b) provides: "If parole is denied such notice shall state with particularity the reasons for such denial." *The simple answer is that the* Commission did not deny parole, but granted it. Even if that were not so, the Commission more than adequately specified its reasons, as required by 28 C.F.R. § 2.13(c), elaborating 18 U.S.C. § 4206.

4. See Affidavit of Cecil McCall, pp. 4–10.

plied Due Process analysis to parole eligibility decisions have afforded only the most minimal safeguards to prisoners challenging the denial of parole. For example, in *Childs,* the court held that Due Process required only that written reasons be given for parole decisions.

*Brown* further suggests that the merits of a parole decision may only be challenged under the Administrative Procedure Act, and only to the extent that the decision is alleged to be so arbitrary as to be beyond the considerable discretion of the Parole Commission. The Fifth Circuit decisions are clear that: "determination of eligibility for parole is wholly within the discretion of the Parole Board," *Thompkins v. U. S. Board of Parole,* 427 F.2d 222, 223 (5th Cir. 1970); that courts are without power "to determine judicially eligibility for parole." *Tarlton v. Clark,* 441 F.2d 384, 385 (5th Cir. 1971); that "[a]bsent flagrant, unwarranted, or unauthorized action," the Parole Board's actions are not subject to review. *Scarpa v. U. S. Board of Parole,* 477 F.2d 278, 283 (5th Cir. 1973). *Quoted in United States v. Norton,* 539 F.2d 1082 (5th Cir. 1976). Even if *Brown* could be read to authorize review of eligibility rulings under the Equal Protection clause, it is clear that in this Circuit they would only be subjected to the most minimal scrutiny.

Petitioner challenges the decision of the Parole Commission on three grounds: one of them, substantive, and two of them, procedural.

## A. Treatment of Furlough Time

■ Petitioner urges that, had the National Commissioners not added the furlough time to his sentence, his release date would have been August 19, 1978. This failure to include time spent on medical furlough as time served, petitioner contends, is the application of a newly created policy that has the effect of increasing petitioner's sentence. Therefore, it is condemned by the *ex post facto* prohibition.

The factual predicates for this argument are absent. First, petitioner merely asserts that there exists an established policy regarding how a medical furlough will be treated for purposes of parole. Exhibit N in no way establishes the existence of such a policy. The Director of the Bureau of Prisons, Norman Carlson, states in his letter only that furlough "does not interrupt the running of the sentence." He makes no reference to parole eligibility, nor does the policy statement of the Bureau.[5] There can be no *ex post facto* violation where there is no extant policy to modify. Second, the exhibits establish, and petitioner acknowledges in Part II of his brief, that the final decision of the full Parole Commission deleted as a reason for its decision petitioner's "extended time on furlough status." In a letter clarifying that decision, the Chairman of the Commission explained that full credit was given to the five months on medical furlough as time served. The Notice of Action by the National Commissioners, so singlemindedly stressed by petitioner, is a "straw man." Because the final Notice of Action on Appeal treated the five-month medical furlough as time served, there was no change in policy that could give rise to an *ex post facto* violation. If there had been an established policy of treating medical furlough as time served *toward parole eligibility,* which Exhibit N does not establish, and if the Notice of Action had been the final decision of the Commission, which it was not, then *ex post facto* analysis would be pertinent. *Love v. Fitzharris,* 460 F.2d 382 (9th Cir. 1972). As it is, petitioner's challenge is merely speculative.[6]

---

5. Even if Exhibit N could be interpreted to state the policy for parole eligibility that petitioners would wish, note should be taken of the indication in the Bureau's policy guidelines that the average length of a furlough is three to seven days. Where petitioner's medical furlough extended to five months, it would not seem arbitrary or capricious for the Parole Commission to have distinguished between time served on furlough and time served in incarceration.

6. Section B, *infra,* makes clear that there can be no question but that credit was given for petitioner's medical furlough. Petitioner leverages his argument that furlough time was counted against him on the unstated assumption that he was entitled to and the Commis-

In his response to the government, petitioner makes no mention of *ex post facto* analysis. Instead petitioner argues that "[a]ny consideration of medical furlough in setting a parole date" is a violation of 18 U.S.C. § 4082(c)(1).[7] The statute cannot bear such an interpretation. It in no way limits the broad discretion to determining parole eligibility vested in the Parole Commission by statute, elaborated by regulation, and repeatedly recognized by the courts. Petitioner's argument is absolutely without merit.

## B. Right to Appeal Without Penalty

■ Petitioner argues that, if the Commission included the five months of medical furlough as time served, then in affirming the release date of January 19, the Commission failed to accord petitioner the four months and one day medical credit allegedly granted by the National Commissioners. This action, it is contended, penalized petitioner for taking an appeal.

This claim has absolutely no substance. The regulations provide that, at every level of the parole process, there is authority to modify in any particular the parole decision. The Regional Commissioner may, on his own motion, modify the recommendation of a hearing examiner panel by up to six months. Likewise that decision may be reversed or modified by two of three Regional Commissioners. 28 C.F.R. §§ 2.24–.25. By definition, an "original jurisdiction" case is one where the National Commissioners are not bound by previous recommendations, but make a fresh determination of the petitioner's eligibility. 28 C.F.R. § 2.17. Where an original jurisdiction case is appealed to the full Commission, the only constraint imposed by the regulations is that the decision be by majority vote. 28 C.F.R. § 2.27. Thus, in modifying the medical credit allegedly awarded petitioner by the National Commissioners, the full Commission merely exercised the discretion granted it by regulation.

The facts of this case do not bring it within the ambit of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). There the petitioner, following a successful appeal and upon reconviction, was given a higher sentence than that imposed at the first trial. The Supreme Court did not hold that the Due Process clause absolutely precludes a harsher sentence upon reconviction. *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). What is barred is the imposition of a penalty for pursuing a right of appeal. The focus is on vindictiveness. Thus, in *Pearce* the Court held that an increased sentence cannot be imposed unless the sentencing judge places certain findings on the record. In *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Court considered a two-tiered system of criminal adjudication, which permitted a misdemeanor defendant convicted in an inferior trial court to seek a trial *de novo* in a court of general jurisdiction. The Court rejected the *Pearce* analogy. It found that the risk of vindictiveness was greatly minimized where the court that imposed the increased sentence was not the one whose original judgment had prompted appellate reversal. Similarly, in *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), where upon retrial after a reversal of his original conviction the defendant was reconvicted and sentenced to a

sion awarded a credit of four months and one day against the nineteen months he was required to serve. This reliance on a "vested" credit is wrong as a matter of law.

7. (c) The Attorney General may extend the limits of the place of confinement of a prisoner as to whom there is reasonable cause to believe he will honor his trust, by authorizing him, under prescribed conditions, to—

(1) visit a specifically designated place or places for a period not to exceed thirty days

and return to the same or another institution or facility. An extension of limits may be granted to permit a visit to a dying relative, attendance at the funeral of a relative, the obtaining of medical services not otherwise available, the contacting of prospective employers, the establishment or reestablishment of family and community ties or for any other significant reason consistent with the public interest; . . . .

greater term *by a jury,* the Court found that the danger of vindictiveness was *de minimis.*

For three reasons, the *Pearce* analogy must be rejected here. First, the Parole Commission did not impose harsher parole terms than the panel of National Commissioners. Both set a release date of January 19, 1979. Second, there is nothing in this case to suggest a reconviction after reversal. Even if the modification of the medical credit can be construed as the imposition of harsher terms, the full Commission did not reverse the lower panel but affirmed it. Third, even if the Commission's decision is construed as a "reversal," the risk of vindictiveness is nil; the Commission is simply reversing itself. *Pearce* placed no constraint on the appellate process; rather it limited the discretion of the sentencing judge or prosecuting attorney as their actions might deter a defendant in exercising his right to appeal. But in forcing the *Pearce* analogy, petitioner would limit appellate discretion. Petitioner would deny the Commission the discretion to reduce a medical credit and thereby modify a recommended release date. The analogue of that principle, however, is not *Pearce* but a rule that an appellate court cannot affirm a conviction because doing so would discourage appeals. Assuming that Due Process analysis is appropriate, this claim premised on *Pearce* is of no constitutional weight. There is also lacking in this claim any serious question that the Commission acted in an arbitrary and capricious fashion. In affirming the release date ordered by the lower panel while modifying its rationale, the Commission was operating well within the discretion granted it.

The question of the medical credit, not the medical furlough, is the crux of petitioner's case. That is demonstrated by a simple calculation. The prescribed time to be served before parole for a "high" severity offender with a "very good" salient factor score is 16–20 months. The Commission authorized release of petitioner after 19 months. If, then, the medical furlough period were treated just as petitioner asserts the law requires, the 19 months would end

in late January, 1979. That, of course, results in no discrepancy with the Parole Commission's determination. Petitioner's whole case for immediate release thus turns on whether the medical credit of four months and one day should be subtracted from the January 19, 1979, release date. As the analysis above shows, assuming that the rationale of the Notice of Action depended on such a credit, the Notice did not create an entitlement to the credit.

### C. Bias

■ Petitioner alleges that he was denied due process because Commissioner Parker was biased against him. Said to support this allegation are an affidavit of Johnnie Walters and a memorandum submitted by Commissioner Parker to the Chief Analyst of the National Appeals Board.

■ There is no question that a fundamental requirement of due process is an impartial decision-maker. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Moreover, the Administrative Procedure Act requires that proceedings under the Act be conducted in an impartial manner. 5 U.S.C. § 556(a). A crucial question is whether petitioner has alleged sufficient facts to give rise to a cognizable constitutional claim. *Hayes v. United States,* 399 F.2d 691 (5th Cir. 1968). The Supreme Court has held that the risk of bias is constitutionally intolerable where the adjudicator has a pecuniary interest in the outcome or has been the target of personal abuse or criticism. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), *citing Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). The facts as alleged are insufficient to establish any comparable risk.

The Walters' affidavit states that sometime between 1969 and 1971, now Commissioner Dorothy Parker was working for Senator Fong. Her husband, Benjamin Parker, worked for the Tax Division in the

Justice Department. On behalf of Senator Fong, she asked her husband to arrange an appointment with the Attorney General to discuss a criminal investigation of one of the Senator's assistants. For seeking the requested appointment without clearance from his superiors, Parker was forced to retire by Assistant Attorney General Walters. Walters states that *he did not consult the Attorney General.* Without more, this affidavit hardly establishes the appearance of personal bias or the potential for vindictiveness. Commissioner Parker was not the target of personal abuse or criticism or retaliation, nor was petitioner the instigator of such behavior. The evidence may provide a basis for inferring that Commissioner Parker would be biased against Walters, but not petitioner. This is far from raising a colorable constitutional claim that the final decision of the Parole Commission was tainted by bias. Petitioner refers to unidentified press reports that Mitchell would receive less than fair treatment from the National Commissioners and also mentions rumors that some members of the Commission believed that Mitchell should serve his full term. Such vague allusions cannot bolster the inadequacies of the Walters' affidavit.

Furthermore, even assuming that Exhibit D means that Commissioner Parker drafted the Notice of Action issued by the panel of National Commissioners on July 31, 1978, that fact is irrelevant. That Notice was modified by the full Commission 10 days later. Thus even if the Court accepts as fact that Commissioner Parker was prejudiced against petitioner and, for that reason, favored denying him credit for time served during his medical furlough, the Notice of Action drafted by her was not final. In rejecting her rationale and crediting petitioner for his time on medical furlough, the full Commission acted independently of Commissioner Parker's influence. The Notice of Action on Appeal suggests as much. The Court need not, however, engage in "form criticism" of the Notice of Action on Appeal. The decisive fact, as the affidavit of the Chairman of the Commission points out, is that Commissioner Parker participated in neither the appellate hearing nor the appellate decision because of an engagement in another city. If that were not enough, before the hearing, the Walters' affidavit was presented to the Commission along with a request that Commissioner Parker recuse herself. The Notice of Action on Appeal by the Commission, minus Commissioner Parker, was thus decided with notice of the alleged bias of Commissioner Parker.

Finally, even if Commissioner Parker was biased against petitioner, and, even if her previous actions indelibly tainted the Commission's final order, petitioner is not entitled to release, but to a new hearing before the Commission. *Brown v. Lundgren,* 528 F.2d at 1055.

## APPLICATION FOR BAIL

■ It is firmly established that it is within the inherent power of the court to authorize bail pending hearing and decision on a petition for writ of habeas corpus. *In re Wainwright,* 518 F.2d 173 (5th Cir. 1975); *Calley v. Callaway,* 496 F.2d 701 (5th Cir. 1974); *Glynn v. Donnelly,* 470 F.2d 95 (1st Cir. 1972); *Baker v. Sard,* 137 U.S.App.D.C. 139, 420 F.2d 1342 (1969). But as Justice Douglas said in *Aronson v. May,* 85 S.Ct. 3, 13 L.Ed.2d 6 (on application for bail):

This applicant is incarcerated because he has been tried, convicted, and sentenced by a court of law. He now attacks his conviction in a collateral proceeding. It is obvious that a greater showing of special reasons for admission to bail pending review should be required in this kind of case than would be required in a case where an applicant had sought by writ of habeas corpus to attack an incarceration not resulting from a judicial determination of guilt. . . . In this kind of case *it is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice.*

**1050**

In the absence of exceptional circumstances, it has been held that the petitioner must make out not merely a clear case on the law "but a clear, and readily evident, case on the facts." *Glynn v. Donnelly,* 470 F.2d at 98. As demonstrated in the discussion of the habeas corpus petition above, this the petitioner has failed to do.

For the several foregoing reasons, this Court concludes that there are no material questions of fact in dispute that have not been determined by a tribunal or agency with authority to do so and that there are no controlling issues of law that are not clear. For that reason, plaintiff's motion for an evidentiary hearing will also be denied.

An order will be entered accordingly.