[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12656

Non-Argument Calendar

_____

ROBERT M. SILLS,

Petitioner-Appellant,

*versus*

FCI TALLADEGA WARDEN,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:21-cv-01685-LSC-SGC

_____

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Robert Sills, a *pro se* federal prisoner, appeals the district court's denial of his 28 U.S.C. § 2241 habeas corpus petition, which sought an order directing the warden of his institution to give "fair treatment" to his request for placement in home confinement under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020). The district court found that it lacked the authority to order his placement in home confinement, and that Sills could not state a procedural-due-process claim because he lacked a constitutionally protected liberty interest in his place of confinement. After careful review, we affirm.

## I.

Sills is a prisoner serving two consecutive 120-month sentences for federal drug crimes. In May 2021, he submitted an administrative request at his place of confinement, a minimum-security prison camp at FCI Talladega, seeking placement in home confinement under the CARES Act. The acting warden denied the request in a June 2021 response, and the Bureau of Prisons ("BOP") denied Sills's appeal in November 2021, concurring with the acting warden's rationale.

According to the warden's response, Sills's request was reviewed under the BOP's guidelines for home confinement under

the CARES Act. Sills was a "47 year old male" who had a "[l]ow [r]isk [l]evel of recidivating" under the PATTERN risk assessment. He was assigned "Medical Care Level 2," which was "considered stable, chronic care," and he had no "underlying medical conditions considered to place [him] at higher risk for severe illness from COVID-19." The record reflects that Sills has a medical history of asthma, headaches, allergies, and chronic ear infections. The acting warden's response continued that Sills had a "[s]erious history of [v]iolence," citing police records relating to a 1990 conviction for unlawful possession of a firearm, which indicated that Sills had possessed a loaded firearm while "banging on the door" of a residence and "yelling threats" with three other individuals. For those reasons, Sills's request was denied.

In December 2021, Sills filed the instant habeas corpus petition under 28 U.S.C. § 2241. He claimed that the warden violated his due-process right to "fair treatment" by failing to follow the governing criteria for home confinement under the CARES Act. He relied on an April 2021 BOP memorandum outlining the factors relevant to determining whether "inmates are suitable for home confinement under the CARES Act." As relief on his § 2241 motion, Sills did not expressly ask to be placed in home confinement. Rather, he sought an order directing the warden to give "fair treatment" to his request based on the April 2021 guidance.

After soliciting further briefing from Sills, a magistrate judge issued a report and recommendation that Sills's § 2241 petition be denied. The magistrate judge first found that Sills's claim, while

styled as a procedural-due-process claim, was really a challenge to the substance of the BOP's decision, which was not subject to judicial review. The magistrate judge further found that any procedural-due-process claim failed because Sills did not have a constitutionally protected liberty interest in his place of confinement.

Sills filed objections, making clear that his "core and only claim is that the respondent has failed to abide by the BOP's own promulgated procedures in denying his request for CARES Act home confinement." He cited district-court decisions permitting habeas challenges based in part on the April 2021 guidance.

The district court overruled Sills's objections without further comment, adopted the magistrate judge's recommendation, and denied the § 2241 petition. This appeal followed.

## II.

We review the denial of a § 2241 petition de novo. *Bowers v. Keller*, 651 F.3d 1277, 1291 (11th Cir. 2011). Any underlying factual findings are reviewed for clear error. *Id.* In conducting our review, we give a generous reading to Sills's *pro se* filings. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). In addition, we must "look behind the label" of his claim and determine whether it is cognizable under other frameworks. *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990).

Section 2241 permits district courts to grant habeas relief for petitioners held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal

prisoner may use § 2241 "to challenge the execution of his sentence, such as the deprivation of good-time credits or parole determinations." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1092–93 (11th Cir. 2017) (en banc).

We start with some background about the BOP, home confinement, and the CARES Act. As part of its expansive authority to manage federal prisons, the BOP has the power to "designate the place of the prisoner's imprisonment" and to transfer "a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b). "[A] designation of a place of imprisonment under [§ 3621(b)] is not reviewable by any court." *Id.*; *see McKune v. Lile*, 536 U.S. 24, 39 (2002) ("[T]he decision where to house inmates is at the core of prison administrators' expertise.").

In addition, the BOP may place a prisoner in "prerelease custody," including home confinement, to facilitate reentry into the community. *See* 18 U.S.C. § 3624(c)(2). Ordinarily, the length of home confinement is limited to no more than six months. *Id.*

But, because of the COVID-19 pandemic, the CARES Act permits the BOP to "lengthen the maximum amount of time" for which home confinement is authorized under § 3624(c)(2), as the BOP deems appropriate, during the national emergency. CARES Act, § 12003(b)(2), 134 Stat. at 516. Neither § 3624(c)(2) nor the CARES Act provides the judiciary any authority to grant an inmate home confinement. *See* 18 U.S.C. § 3624(c)(2); CARES Act, § 12003(b)(2).

After passage of the CARES Act, the Attorney General directed the BOP to prioritize granting home confinement as a tool to combat the dangers posed by COVID-19 in federal prisons, unlocking the BOP's expanded powers. In a memorandum dated March 26, 2020, the Attorney General outlined a "non-exhaustive list of discretionary factors" to consider under the "totality of the circumstances." These factors included the age and vulnerability of the inmate to COVID-19, the security level of the institution, the inmate's conduct in prison, the inmate's risk score under PATTERN (risk assessment for recidivism and violence), whether the inmate had a reentry plan, and the danger the inmate posed to the community.

Just over a year later, on April 13, 2021, the BOP adopted updated guidance listing the criteria for institutions to use when assessing suitability for home confinement. An inmate was suitable for home confinement, according to the April 13 guidance memo, if he had the following: (a) a "verifiable release plan"; (b) no current or prior offense that was "violent, a sex offense, or terrorism-related"; (c) no current detainer; (d) a low or minimum security placement; (e) a low or minimum PATTERN recidivism risk score; (f) no violent or gang-related activity while incarcerated; and (g) served 50% or more of his sentence (or at least 25% if less than 18 months of the sentence remain). The April 13 memo also directed "review[]" of the inmate's recent prison disciplinary history and of "the COVID-19 vulnerability of the inmate, in accordance with CDC guidelines."

### III.

We conclude that the district court properly denied Sills's § 2241 petition. As Sills concedes, the court lacked the authority to order his placement in home confinement. *See United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). And he has alleged nothing that would make his custody in violation of the Constitution or laws of the United States. *See* 28 U.S.C. § 2241(c)(3).

Sills maintains that the warden and the BOP failed to follow the BOP's own promulgated criteria in the April 13 guidance memo when denying his request for CARES Act home confinement. He states that courts have found this argument to be "an actionable habeas claim," which he compares to a challenge to the denial of parole. Sills asserts that he was denied due process in relation to the denial of his request for home confinement, claiming that he had a liberty interest in "fair treatment" based on a former regulation that was codified at 28 C.F.R. § 541.12.

To state a procedural-due-process claim, a petitioner must show he was deprived of a constitutionally protected liberty interest without due process of law. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). An inmate is entitled to procedural-due-process protections only if he has such a "protected liberty interest." *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1346–47 (11th Cir. 2016). In general, liberty interests for prisoners are "limited to freedom from restraint" which imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 482, 483–84 (1995). There is no liberty interest in "conditional[] release before the expiration of a valid sentence," *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979), or in a particular place of confinement more generally, *Meachum v. Fano*, 427 U.S. 215, 225, 228–29 (1976).

Sills does not dispute that he lacks a protected liberty interest in home confinement. *See, e.g.*, *Grayden*, 345 F.3d at 1232; *Greenholtz*, 442 U.S. at 7. So he was not entitled to due-process-protections in relation to that decision.

Still, though, Sills argues that he has a liberty interest in "fair treatment" on his request for placement in home confinement, citing 28 C.F.R. § 541.12 and case law regarding parole decisions. *See, e.g.*, *Wilson v. U.S. Parole Comm'n*, 193 F.3d 195 (3d Cir. 1999) ("[T]he Parole Commission must follow its own regulations, which have the force of law."). Section 541.12 does not appear to be a current regulation and cannot be read to create a protected entitlement, in any event.[1] But we agree that case law regarding

---

[1] Section 541.12 appears to have stated that "[inmates] have the right to expect that as a human being [they] will be treated respectfully, impartially and fairly by all personnel." *Barden v. Keohane*, 921 F.2d 476, 483 (3d Cir. 1990) (quoting 28 C.F.R. § 541.12 (1989)). But *Barden* did not hold that this regulation created a protected liberty interest. *See id.* Nor does this regulation meet *Sandin*'s standard for protected liberty interests. *See Sandin v. Conner*, 515 U.S. 482, 483–84 (1995). Plus, Sills's interpretation of § 541.12, even if valid, would subject a wide array of prison-management decisions to judicial review, in contravention of Supreme Court precedent. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (rejecting a view of due process that "would subject to judicial

discretionary parole decisions offers useful guidance in the absence of more on-point precedent.  We briefly summarize the relevant law before turning to the facts here.

## A.

As a general rule, unless there is a liberty interest in parole, a defendant does not have a "constitutional right to procedural due process protections" in parole determinations.  *O'Kelley v. Snow*, 53 F.3d 319, 322 (11th Cir. 1995); *see Slocum v. Ga. St. Bd. of Pardons & Paroles*, 678 F.2d 940, 941–42 (11th Cir. 1982) ("Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness.").  We have specifically rejected a due-process challenge based on an alleged entitlement to fair parole consideration.  *See Slocum*, 678 F.2d at 941–42.

But our precedent does not wholly foreclose judicial review of discretionary parole decisions.  In *Monroe v. Thigpen*, for example, we recognized a due-process right not to be treated "arbitrarily and capriciously," even in the absence of a liberty interest in parole. 932 F.2d 1437, 1441–42 (11th Cir. 1991).  A parole board violates this right if it engages in "flagrant or unauthorized action," such as admittedly relying on false information beyond its statutory authority.  *Id.  But cf. Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982) (no flagrant or unauthorized action where the parole board's

---

review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts").

decision was "within the powers established by the statutes"). But even so, *Monroe* did not adopt a broader "due process right to be fairly considered for parole." *See Monroe*, 932 F.2d at 1440–42.

Nevertheless, even in "the absence of a constitutional claim," a federal prisoner challenging "the decision of the board or the process by which that decision was reached" can obtain relief by showing that the board's actions were "so unlawful as to make his custody in violation of the laws of the United States." *Brown v. Lundgren*, 528 F.2d 1050, 1053–54 (5th Cir. 1976) (citing 28 U.S.C. § 2241(c))[2]; *see also Bowers v. Keller*, 651 F.3d 1277, 1291 (11th Cir. 2011) ("Our review is limited to whether the [parole board] acted unlawfully such that Bowers is in custody in violation of the Constitution or laws . . . of the United States." (cleaned up)). But "[a] departure by the board [from its own rules] does not necessarily make [a prisoner's] custody illegal." *Brown*, 528 F.2d at 1055. We will not reverse a decision of the board "unless it involves flagrant, unwarranted, or unauthorized action." *Bowers*, 651 F.3d at 1291.

## B.

We have not previously addressed the scope of judicial review over the denial of home confinement under the CARES Act. For purposes of this appeal, we assume without deciding that the denial of home confinement is reviewable to the same extent as the

---

[2]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

denial of parole to a federal prisoner.[3]  But Sills has alleged nothing to suggest his custody by the warden violates the Constitution or laws of the United States.  *See* 28 U.S.C. § 2241(c); *cf. Bowers*, 651 F.3d at 1291; *Brown*, 528 F.2d at 1054–55.

According to Sills, the BOP failed to follow its own guidelines by denying home confinement based on findings that he had a serious history of violence and did not have a medical condition placing him at higher risk for severe illness from COVID-19.  He asserts that his prior convictions did not include violence and that he has asthma, which the CDC indicates can make severe illness from COVID-19 more likely "if it's moderate to severe."  *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 23, 2023).

Given the broad range of discretion vested in the BOP, Sills cannot show the BOP's conduct was "flagrant" or "unauthorized"

---

[3] Sills has not briefed this issue, and the warden has not filed a brief at all.  It does not appear that Sills is asking for a different standard than the parole cases, nor is there an obvious reason to apply a different standard, since the two situations are broadly comparable.  To the extent material differences exist, they would work against Sills.  Notably, § 3625 expressly exempts the BOP's prisoner-placement and prerelease-custody decisions, including home confinement, from judicial review under the Administrative Procedures Act (APA), *see* 18 U.S.C. § 3625, while the federal parole board appears to be subject to the APA at least in part, *cf. Brown v. Lundgren*, 528 F.2d 1050, 1053–54 (5th Cir. 1976) (discussing the APA in relation to the federal parole board).

such that his custody is unlawful.  He does not dispute that the BOP could consider his criminal history and medical conditions as part of assessing his suitability for home confinement under the totality of the circumstances.  And nothing in the April 13 guidance memorandum prohibited the warden from looking at the underlying facts of a prior conviction.  To extent the warden departed from the BOP guidance, such a departure does not necessarily make Sills's custody illegal.  Cf. Brown, 528 F.2d at 1055 ("A departure by the board does not necessarily make his custody illegal.").  After all, he is serving a valid sentence, and home confinement is committed to the BOP's discretion.  See Greenholtz, 442 U.S. at 7 ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").

Nor has Sills shown that the warden relied on false information, as in Monroe.  See 932 F.2d at 1441–42.  He does not deny the warden's description of the police records, which reflect that he engaged in intimidating and threatening behavior while armed.  Plus, CDC guidance indicates that the severity of asthma determines whether it increases the risk of severe illness from COVID-19, and the warden apparently found that Sills's asthma was not severe enough to qualify under CDC guidelines.  Nothing in the record contradicts that assessment.  The question whether these factors warranted the denial of home confinement is not before us.  Our review is, at best, much narrower.  And we see nothing before us to support a conclusion that the denial of home confinement in

Sills's case exceeded the BOP's authority or rendered Sills's custody illegal. *Cf. Bowers*, 651 F.3d at 1291; *Brown*, 528 F.2d at 1055.

The cases Sills cites are not binding and do not warrant a different outcome. Sills refers to case law from the Third Circuit permitting judicial review of certain discretionary decisions of the BOP. *See Coburn v. Spaulding*, No. 3:20-cv-01389, 2021 WL 3026851, *4 (M.D. Penn. June 15, 2021) ("Although the Court cannot review Coburn's challenge to the BOP's decision under the CARES Act, the Court may assess 'whether the BOP abused its discretion.'"); *see also Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012) (reviewing a placement decision under § 3621(b) for "whether the BOP abused its discretion"). Under this case law, the BOP abuses its discretion if it fails to recognize and exercise the discretion available to it to decide a prisoner's claim for relief. *See Barden v. Keohane*, 921 F.2d 476, 481, 483 (3d Cir. 1990) (remanding for the BOP to give "fair treatment" to a prisoner's request, where the BOP had mistakenly found it lacked the authority to grant relief).

In this case, though, the BOP considered Sills's request and exercised its broad authority under § 3624(c)(2) and the CARES Act to deny home confinement after discussing many of the factors listed in the April 13 guidance memo. It did not fail to recognize its authority or deny the request on nondiscretionary grounds. So *Barden* does not support remand here. And even under *Barden*, the petitioner still must establish a "serious potential for a

14                        Opinion of the Court                    22-12656

miscarriage of justice" warranting habeas relief. *See id.* at 479. Sills has made no such showing here.

For these reasons, we affirm the denial of Sills's § 2241 petition.

**AFFIRMED.**