James Paul GRATTAN, Petitioner-Appellant,

v.

Maurice H. SIGLER, Chairman, United States Board of Parole, United States Bureau of Prisons, Respondents-Appellees.

No. 75–2042.

United States Court of Appeals, Ninth Circuit.

Aug. 6, 1975.

As Amended Oct. 31, 1975.

Victor Sherman (argued), Beverly Hills, Cal., for petitioner-appellant.

Deanne Smith, Asst. U. S. Atty. (argued), Los Angeles, Cal., for respondents-appellees.

## OPINION

Before ELY and CHOY, Circuit Judges, and SOLOMON,* District Judge.

PER CURIAM:

James Grattan pleaded guilty to a charge of possession of marijuana with intent to distribute and was sentenced to five years imprisonment under 18 U.S.C. § 4208(a)(2).

Grattan began to serve his sentence on March 30, 1973, with four months accumulated jail time. On June 16, 1973, Grattan was given a parole hearing before local representatives of the United States Board of Parole (Board). Grattan was told that no recommendation for or against parole would be made locally, but that the decision would be made by the Board of Parole in Washington, D. C. In August, 1973, the Board denied Grattan a parole and set a new hearing in December, 1975. No reasons for the parole denial or the 28 month setoff were given.

When Grattan was imprisoned, he received a "salient factor" rating of 9, or "very good", under the Parole Board's regulations.[1] Grattan obtained a second hearing before local representatives of the Board on October 11, 1974. At this hearing Grattan was told that his offense had been classified in the "very high" offense severity category.[2] Apparently no reason was given for this classification. The Board's regulations provide that a "customary" sentence for a prisoner with a salient factor rating of "very good" and an offense severity rating of "very high" is 26 to 36 months. 28 C.F.R. § 2.20, 39 Fed.Reg. 20031 (June 5, 1974).

After the second hearing, the local hearing officers fixed a tentative parole release date of December 19, 1974. Grattan may have been told of this date orally, but received nothing in writing. The Regional Director of the Board timely referred the decision of the local hearing officers to the National Appellate Board for reconsideration on November 4, 1974, pursuant to 28 C.F.R. § 2.24, 39 Fed.Reg. 20034 (June 5, 1974).[3] Grattan was notified of this action.

The National Appellate Board rescinded the parole date on November 7, 1974, and set a new hearing in August, 1975. The notice of the Board's action contained a brief statement of reasons. It noted that the guideline period for a "very high" offense severity rating and a salient factor rating of "very good" was 26 to 36 months. At that time Grattan had served approximately 23 months. The statement included the standard reason provided a prisoner who

---

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. A prisoner's "salient factor" is an objective measure of his behavior characteristics. 28 C.F.R. § 2.20, 39 Fed.Reg. 20031–20034 (June 5, 1974), 40 Fed.Reg. 10976–10979 (March 10, 1975); see Grasso v. Norton, 371 F.Supp. 171, 173 (D.Conn.1974). A prisoner with no prior convictions or incarcerations, who is 18 or older, whose offense did not involve auto theft, who has never had parole revoked, who was never dependent on drugs, who has completed high school, who worked or was in school for at least six months of the two years prior to incarceration, and who plans to live with his family when released would receive a maximum "salient factor" of 11.

2. The regulations of the Parole Board rate offenses according to their relative severity; from "low" (e. g. minor theft) to "greatest" (e. g. wilful homicide, skyjacking). 28 C.F.R. § 2.20, 39 Fed.Reg. 20031–20034 (June 5, 1974), 40 Fed.Reg. 10976–10979 (March 10, 1975).

3. 28 C.F.R. § 2.24 provides in part:

"A regional Director may review the decision of any examiner panel and refer the decision, prior to written notification to the prisoner, with his recommendation and vote to the National Appellate Board for reconsideration and any action it may deem appropriate."

has not served the time provided by the regulations: " . . . [A] decision outside the guidelines . . . does not appear warranted. There is not a reasonable probability that you would live and remain at liberty without violating the law."

On February 6, 1975, after Grattan exhausted his administrative remedies, he filed a petition for writ of habeas corpus. More than a month later, the National Appellate Board sent Grattan a second statement of reasons in support of its decision to rescind his parole date. It repeated the reasons stated in the first notice and added: "Your offense falls in the 'very high' severity category because you were the ringleader of a very serious commercial marijuana venture."

The District Court denied the petition on the ground that "[t]he Board of Parole possesses broad authority and discretion in making its decisions regarding parole, and the courts are generally powerless to interfere with the Board's actions . . . .. [T]he actions taken by the Board of Parole herein were well within its authority and discretion."

Grattan contends that his offense was improperly rated in the "very high" offense severity category. He concedes that other alleged offenses may be considered by the Board when it assigns an offense severity rating to a prisoner's offense. *Lupo v. Norton,* 371 F.Supp. 156, 161–162 (D.Conn.1974). But he argues that the allegation that he was a "ringleader" is not a separate offense and cannot justify an offense severity rating of "very high" because the Board's regulations rate the most serious marijuana offense (sale of marijuana

valued at more than $5,000) in the "high" offense severity category. He further argues that the "very high" offense severity category is reserved for offenses which involve the sale of "soft drugs" (presumably cocaine, barbiturates, amphetamines, and similar drugs), possession of hard drugs, armed robbery, sexual offenses involving force, and extortion.

■ In our opinion, the Board's regulations permit the Board to raise Grattan's offense severity rating if he was a ringleader. 28 C.F.R. § 2.20, 39 Fed.Reg. 20030 (June 5, 1974).[4] In the peculiar circumstances of this case, when such a charge was used by the Board to increase the offense severity rating, Grattan should have been given such reasonable notice of the change as to enable him to challenge its accuracy. 28 C.F.R. § 2.13(d); *Lupo v. Norton, supra* at 160–161, 162.

■ Moreover, Grattan was not told why his offense severity rating had been designated "very high" until after he had exhausted his administrative remedies and filed this petition for habeas corpus. This explanation came too late to serve the purpose of the Board's own regulations. In view of the defects in previous Board proceedings in this case, Grattan is entitled to a new hearing to be conducted in accordance with 28 C.F.R. §§ 2.12, 2.13, 40 Fed.Reg. 10974 (March 10, 1975), and during which Grattan is to be allowed to respond to the allegation that he was a ringleader. He should also be permitted to present evidence in mitigation.

Reversed. The District Court is directed to grant the petition unless the Board provides Grattan a new hearing within 60 days.

---

4. 28 C.F.R. § 2.20 provides in part:

" . . .

(b) These guidelines indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics . . ..

(c) These time ranges are merely guidelines. Where the circumstances warrant, decisions

outside of the guidelines (either above or below) may be rendered . . ..

(d) The guidelines contain examples of offense behaviors for each severity level. However, especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed."