701 F.2d 810
 Brook Randolph REYNOLDS, Petitioner-Appellant,
v.
Cecil McCALL, Chairman, United States Parole Commission;
United States Bureau of Prisons; Timothy Keohane,
Warden, Federal Correctional
Institution, Terminal Island,
Respondents-Appellees.
 No. 82-5112.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 10, 1982.
Decided March 16, 1983.
 
 Janet Sherman, Nasatir, Sherman & Hirsch, Los Angeles, Cal., for petitioner-appellant.
 Marcy Norton, Michael W. Emmick, Asst. U.S. Attys., Los Angeles, Cal., for respondents-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before ELY and CHOY, Circuit Judges, and CARROLL, District Judge.*
 CHOY, Circuit Judge:
 
 
 1
 Brook Randolph Reynolds, a federal prisoner, appeals from the denial of his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2241. He contends that: (1) the Regional Parole Commissioner denied him due process by failing to give him timely notice that the Regional Commissioner had referred the decision on his presumptive parole date to the National Parole Commissioners; (2) the National Parole Commissioners abused their discretion by extending his presumptive parole date beyond the examiner panel's recommendation; and (3) the Parole Commission violated his right to due process by assigning his offense to the "Greatest II" severity category of the parole guidelines. We affirm the denial of Reynolds' petition.
 
 
 2
 * Background
 
 
 3
 The parole guidelines adopted by the United States Parole Commission set forth suggested ranges of time to be served before release. The ranges vary according to the characteristics of the offense ("severity rating") and the characteristics of the offender ("salient factor" score). 28 C.F.R. Sec. 2.20 (1981). A hearing examiner panel makes the initial recommendation for a parole release date. Id. Secs. 2.13, 2.23. An administrative hearing examiner then reviews the panel's recommendation and makes his own recommendation to the Regional Commissioner, who may modify any panel recommendation by up to six months. Id. Sec. 2.24(b)(2); see Hatton v. Keohane, 693 F.2d 88, 89 (9th Cir.1982). If the Regional Commissioner decides to modify the panel's recommendation by more than six months and if the panel's recommendation is within the guideline range, the Regional Commissioner must refer the matter to the National Commissioners for further consideration. See 28 C.F.R. Sec. 2.24 (1981). Written notice of a referral to the National Commissioners must be sent to the prisoner within 21 days of the initial parole hearing. Id. Sec. 2.24(a). Except in emergencies, the National Commissioners must act within 30 days of the referral. Id.
 
 
 4
 Once the Regional Commissioner or National Commissioners have set a presumptive parole date, the prisoner has 30 days to file a regional appeal. Id. Sec. 2.25(a). The Regional Commissioner's decision on the regional appeal may be appealed to the National Appeals Board, whose decision is final. Id. Sec. 2.26(a), (c).
 
 
 5
 At the age of 22, Reynolds pleaded guilty to armed bank robbery with a kidnapping under 18 U.S.C. Sec. 2113(a), (d), and (e), and was sentenced to a twelve-year adult prison term. The examiner panel gave Reynolds a severity rating of "Greatest II" because he had committed an armed bank robbery and kidnapping by holding a bank manager's wife hostage in return for $50,000. He received a very good prognosis, with a salient factor score of 9.[1] The Parole Commission's youth guidelines indicated that a person with Reynolds' severity rating and salient factor score should serve forty months or more before being released on parole.[2] 28 C.F.R. Sec. 2.20 (1981).
 
 
 6
 The examiner panel recommended a parole date after 48 months in custody. On September 25, 1979, the Administrative Hearing Examiner disagreed with the panel's recommendation, and recommended a parole date after 60 months in prison because of the severity of the crime. The Regional Commissioner agreed with the 60-month term. Because this recommendation modified Reynolds' presumptive parole date by more than six months, the Regional Commissioner referred the case to the National Commissioners on September 28, 1979. The Regional Commissioner, however, did not notify Reynolds of the referral until January 21, 1980. Meanwhile, the National Commissioners had notified Reynolds on November 21, 1979, that they had upheld the decision of the Regional Commissioner. On December 16, 1979, Reynolds filed a regional appeal, requesting an explanation why his presumptive parole date had been extended twelve months beyond the examiner panel's recommendation. The Regional Commissioner affirmed her earlier decision and notified Reynolds on January 29, 1980. Reynolds filed a national appeal, and the National Appeals Board affirmed the Regional Commissioner's decision. Reynolds then petitioned for habeas relief.
 
 II
 Untimely Notice
 
 7
 The Government concedes that the Regional Commissioner failed to comply with the requirement of 28 C.F.R. Sec. 224(a) (1981) to notify Reynolds within 21 days of the parole hearing that she had referred Reynolds' case to the National Commissioners. Instead, Reynolds was notified on January 21, 1980, 131 days after the hearing and after the National Commissioners had already affirmed the Regional Commissioner. As a result of this delay, Reynolds did not know until the National Commissioners affirmed the Regional Commissioner on November 21, 1979, that the administrative hearing examiner and the Regional Commissioner had disagreed with the examiner panel's recommendation. Reynolds also points out that the National Commissioners did not act within 30 days of the referral by the Regional Commissioner as mandated by 28 C.F.R. Sec. 2.24(a) (1981). Instead, the National Commissioners acted 54 days after the referral. Reynolds contends that, because of these errors, he was unable in his regional appeal to present additional information and arguments to justify the original recommendation of the examiner panel.[3]
 
 
 8
 We have held that the federal parole statute creates, at most, a liberty interest entitled to no more protection of due process than that the Supreme Court held to apply to the Nebraska parole statute in Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Bowles v. Tennant, 613 F.2d 776, 778 (9th Cir.1980). Greenholtz held that Nebraska inmates had an expectation of parole that should not be denied without an opportunity to be heard and notification of the parole board's reasons for denial of parole. 442 U.S. at 16, 99 S.Ct. at 2108.
 
 
 9
 Reynolds relies on Grattan v. Sigler, 525 F.2d 329, 331 (9th Cir.1975), to argue that he was denied due process by the Regional Commissioner's failure to notify him of the referral to the National Commissioners before he filed his regional appeal. In Grattan, we held that a new parole hearing was required because the Parole Commission did not inform the prisoner of the reasons for its denial of parole until after he had exhausted all his administrative appeals. Id. at 331. Here, however, the National Commission notified Reynolds of the reasons for its decision on November 21, 1979, more than three weeks before Reynolds filed his regional appeal on December 16. This was the official decision on his case, based on the hearing before the examiner panel. Thus Reynolds undertook his regional appeal and his final appeal to the National Appeals Board with full knowledge of the decision he was appealing. See Bowles v. Tennant, 613 F.2d at 779 (distinguishing Grattan because Bowles was informed of the basis for the denial of parole in time to challenge it in a regional appeal); Izsak v. Sigler, 604 F.2d 1205, 1207 n. 4 (9th Cir.1979) (same). If Reynolds had any arguments or information tending to show that the National Commissioners had erred in extending his presumptive parole date, he could have presented them in his regional appeal. See 28 C.F.R. Sec. 2.25(f). The failure to give Reynolds timely notice of the referral to the National Commissioners did not affect his ability to argue this appeal.
 
 
 10
 Reynolds contends, however, that the National Commission's statement of reasons was inadequate to enable him to make an informed administrative appeal. The notice sent to Reynolds on November 21 stated:
 
 
 11
 Your offense behavior has been rated as Greatest II severity because you were convicted of kidnapping and armed bank robbery. The kidnapped person was used as a hostage to obtain $50,000. You have a salient factor score of 9. You have been in custody a total of 13 months. Guidelines established by the Commission for youth cases which consider the above factors indicate a range of more than 40 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, it is found that your release at this time would depreciate the seriousness of your offense behavior. Commission guidelines for Greatest II severity cases do not specify a maximum limit. Therefore, the decision in your case is based in part upon a comparison of the relative severity of your offense behavior with the offense behaviors and time ranges specified in the Greatest I severity category.
 
 
 12
 This notice advised Reynolds of his revised release date and specified why he had been placed in the "Greatest II" severity category. It stated that the 60-month release date was necessary to avoid "depreciat[ing] the seriousness of [Reynolds'] offense." Although not as complete as it might have been, the notice is as specific as others found to satisfy statutory and due process requirements. See, e.g., Bowles v. Tennant, 613 F.2d at 778-79; Izsak v. Sigler, 604 F.2d at 1207 & n. 3; Shahid v. Crawford, 599 F.2d 666, 668, 670-72 (5th Cir.1979). It gave Reynolds adequate notice of the issues to be raised in his regional appeal.
 
 
 13
 The only fact that Reynolds was not advised of before commencing his administrative appeals was that the presumptive parole date had been set after referral to the National Commissioners. Reynolds contends that the failure to notify him of the referral confused him about what issues were appealable and to whom, and that this confusion prevented him from adequately presenting his regional appeal. In his regional appeal, Reynolds raised only one question, a request for the reasons for the extension of his presumptive parole date beyond the examiner panel's recommendation.
 
 
 14
 Reynolds appears to contend that had he not been confused by the defect in notification, he would also have argued that: (1) he should have been placed in the "Greatest I" instead of the "Greatest II" category; and (2) the circumstances of his crime did not warrant extension of the presumptive parole date to 60 months. These are the same arguments that Reynolds advanced before the National Appeals Board and that he now advances before this court. Even assuming that the defect in notification prevented him from raising these two arguments on his regional appeal, the arguments are meritless, as we explain below. Thus, Reynolds suffered no prejudice from the Regional Commission's failure timely to notify him of the referral of his case to the National Commissioners. See United States v. Miller, 599 F.2d 249, 250-51 (8th Cir.1979); Northington v. United States Parole Commission, 587 F.2d 2, 4 (6th Cir.1978). Furthermore, we note that Reynolds received, in all, six reviews of his parole application, more than his "day in court."
 
 III
 Extension of the Presumptive Parole Date
 
 15
 We will not overturn the judgment of the Parole Commission in setting a presumptive parole date unless the Commission abused its discretion. See Hatton v. Keohane, 693 F.2d at 90; O'Brien v. Putnam, 591 F.2d 53, 55 (9th Cir.1979). Reynolds presents two arguments why the National Commissioners abused their discretion in extending his presumptive parole date one year beyond the examiner panel's recommendation. First, he contends that because the National Commissioners considered the severity of his crime when they placed him in the Greatest II category, the Commissioners could not reconsider the severity of the crime to justify extending the presumptive parole date beyond the original recommendation. He contends that the proper procedure is for the Commissioners to consider the severity of the crime only when they select a category. We rejected such a contention in O'Brien. Id. See also Brown v. Lundgren, 528 F.2d 1050, 1055 (5th Cir.1976).
 
 
 16
 Second, Reynolds argues that the reasons that the National Commissioners gave for extending his presumptive parole date do not support the Commissioners' decision. The Commissioners justified their decision on the ground that the seriousness of the offense required a term longer than 48 months. See 28 C.F.R. Sec. 2.13(d)(2) (reasons for parole denial may include the fact that release would depreciate the seriousness of the offense). The Commissioners noted in particular the large amount of the ransom ($50,000) that Reynolds asked for his hostage. Because no maximum term is specified for the most serious group of crimes, the Commission must exercise its discretion to set a term with major reliance on the seriousness of the crime. The maximum term for the less severe Greatest I crimes with a very good prognosis is 40 months under the youth guidelines and 52 months under the adult guidelines. It was not an abuse of discretion to set Reynolds' term at 60 months for a crime that fell in the more severe Greatest II category and that involved the aggravating circumstance of a large ransom.[4]
 
 IV
 Assignment to the Greatest II Category
 
 17
 Reynolds contends that the Parole Commission violated due process by placing him in the Greatest II severity category. The Greatest II category includes: "Kidnapping (for ransom or terrorism; as hostage; or harm to victim)." 28 C.F.R. Sec. 2.20 (1981). Reynolds contends that he should have been placed in the Greatest I category, which includes: "Kidnapping [other than listed in Greatest II; limited duration; and no harm to victim]." Id. He contends that because his kidnapping was of limited duration and caused no harm to his victim, he should have been placed in the Greatest I category. This contention ignores the fact that the Greatest I category expressly excludes that conduct listed in Greatest II, and that Reynolds kidnapped the bank manager's wife and held her for ransom. See Young v. United States Parole Commission, 682 F.2d 1105, 1108 (5th Cir.1982). Furthermore, Sec. 2.20 note (c) of the guidelines states: "If an offense behavior can be classified under more than one category, the most serious applicable category is to be used." Thus, Reynolds' offense clearly falls within the Greatest II category.[5]
 
 
 18
 The denial of the petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 The Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 The best possible salient factor score is 11
 
 
 [2]
 The guidelines specified no maximum term
 
 
 [3]
 Reynolds does not argue that these errors prevented him from presenting information or arguments to the National Commissioners. In any event, the regulations do not give prisoners a right to appeal to the National Commissioners, but only allow appeals to the Regional Commission and the National Appeals Board. See 28 C.F.R. Secs. 2.25, 2.26 (1981)
 
 
 [4]
 Reynolds also appears to contend that the failure of the parole guidelines to specify an upper limit for the release date of those assigned to the Greatest II category violated his right to equal protection. The guidelines, however, are merely "procedural guideposts, without the characteristics of law," and do not restrict the Commission's broad discretion. Rifai v. United States Parole Commission, 586 F.2d 695, 697-98 (9th Cir.1978). It is well within the Commission's authority to assign a parole date that is beyond the upper limits of the guidelines. O'Brien, 591 F.2d at 55-56; Rifai, 586 F.2d at 699 n. 7. If the Commission need not assign parole dates within the upper limits, then it hardly violates equal protection not to have an upper limit for the worst crimes. Moreover, Reynolds has not alleged that any other prisoners sentenced for similar offenses have been treated more leniently by the Parole Commission
 
 
 [5]
 Reynolds also argues that his parole date should have been determined under the adult guidelines instead of the youth guidelines. This contention is frivolous because Reynolds could only have been helped by consideration under the youth guidelines. The definitions of "Greatest I" and "Greatest II" offenses are identical under the adult and youth guidelines, and neither the adult nor the youth guidelines specify a maximum term for Greatest II offenses. The youth guidelines, however, require that a prisoner with a very good prognosis, as Reynolds had, who commits a Greatest II offense be imprisoned for a minimum of 40 months, whereas the adult guidelines require such a person to serve a minimum of 50 months. 28 C.F.R. Sec. 2.20